ROBERT F. KANE, ESQ. (State Bar No. 71407)
LAW OFFICES OF ROBERT F. KANE
870 Market Street, Suite 1128
San Francisco, CA 94102
(415) 982-1510

Attorneys for Plaintiff
LELAND H. BRAY

FILED
JAN 24 PM 12: 21
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BZ

LELAND H. BRAY,

Plaintiff,

vs.

MESSMORE KENDALL, HONEY TAYLOR, MESSMORE KENDALL III, ALEXANDER KENDALL, and DOES 1 through 100, inclusive,

Defendants.
_______________________________/

CASE NO. 08 0535

**COMPLAINT FOR DAMAGES, SPECIFIC PERFORMANCE, AND DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

COME NOW, Plaintiff Leland H. Bray who alleges as follows:

**PARTIES**

1. Plaintiff Leland H. Bray ("Plaintiff") is individual who is a citizen of the United States and who resides in California. Plaintiff was married to Arline Bray ("Arline") who passed away on October 5, 2007 and Plaintiff has succeeded to Arline's interest with respect to the matters that are the subject of this complaint.

2. Plaintiff is informed and believes and on that basis alleges that defendants Messmore Kendall ("Kendall"), Honey Taylor ("Taylor"), Messmore Kendall III ("Kendall III"), and Alexander Kendall ("Alexander") are citizens of the United States. Plaintiff is informed and believes and on that basis alleges that each of said defendants resides in a state other than California and do not reside in Mexico.

3. Defendants Does 1 through 100, inclusive, are sued herein under fictitious names, their true names and capacities being unknown to Plaintiff. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Defendants is in some manner legally responsible for the events and damages plaintiff alleges in this complaint, contributed to the wrongs and damages alleged herein, or claim a legal or equitable right, title, stake, lien, or interest in the properties which are the subject of this action. Plaintiff will amend this complaint to allege their true names and capacities, and any additional allegations, when they are ascertained by Plaintiff.

4. Plaintiff is informed and believes and on that basis alleges that each defendant was the agent and/or employee and/or principal of each of the remaining defendants, and in doing the acts herein alleged, was acting within the course and scope of such agency and employment, and/or with the knowledge, consent, authority of each of the remaining defendants and/or with knowledge of their acts and/or wrongdoing. By virtue of the foregoing, each defendant had knowledge and constructive notice of, and/or authorized and consented to the acts of each of the

other defendants, and/or ratified the wrongful acts of each of the other defendants, as herein alleged by among other things, retaining and sharing in the benefits of said acts.

5. Plaintiff is informed and believes and on that basis alleges that Defendants and each of them, knowingly and willfully entered into an agreement or agreements and conspiracy or conspiracies with the other defendants or aided and abetted the other defendants to do all or some of the acts herein alleged.

**JURISDICTION AND VENUE**

6. This Court has person jurisdiction over the Defendants named herein because the wire transfer which paid for the property at issue, which has not been transferred to Plaintiff, originated in California and that there is complete diversity of citizenship between Plaintiff and the Defendants and the damages sought exceed $75,000. This is an action for Civil RICO under 18 U.S.C. §1962, as well as pendent state claims. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1332 (diversity) and 28 U.S.C. §1367 (supplemental jurisdiction).

**GENERAL ALLEGATIONS**

7. Kendall was the owner of a single family residential house known as Casa Abanico Verde located at Calle Cuauhtemoc number 560, Colonia El Cerro, Puerto Vallarta, Jalisco, Mexico ("the Property") pursuant to a Bank Trust with HSBC, formerly Bital, a Mexican bank and defendants Taylor, Messmore III and Alexander are subsequent beneficiaries of the Trust in the event of Kendall's death.

8. Plaintiff is informed and believes and on that basis

alleges that Kendall listed the Property for sale with Silvia Elias ("Elias"), David Pullen ("Pullen"), who are husband and wife, and/or PV Real Estate ("PV"), a business entity owned by Elias and Pullen.

9. Prior to being shown the Property, Plaintiff and Arline (collectively "Brays") met with Elias and Pullen in their office and Elias and Pullen presented themselves as professional, well informed and experienced in transactions involving the transfer of property in Mexico to American citizens. On December 3, 2003, the Brays met with Elias and Elias advised the Brays of her personal relationship with Kendall and her personal knowledge of the Property, including her familiarity with the engineer who constructed it and several other houses in the area. The Brays had earlier also viewed their website which portrays them as having a long history of success, experience and knowledge of the local real estate market, the laws of Mexico pertaining to real estate transaction, their employee's commitment to honesty and integrity and their legal expertise in handling transactions involving American citizens.

10. On or about December 2, 2003, the Brays, who were not then familiar with real estate laws, procedures and requirements of State of Jalisco and the Puerto Vallarta area relied upon Elias, in particular, and Pullen, in general, and made an offer to purchase the Property after Elias had suggested that $10,000 be deducted from the asking price and Kendall accepted the Brays' offer.

11. Elias and Pullen, who held themselves out as being experience and knowledgeable regarding transactions involving

United States citizens, then assumed complete control of the transaction by preparing the contract of sale and an escrow was opened at First American Title Company ("First American") in Sunrise, Florida. The contract of sale provided, in pertinent part, that the parties were to diligently provide the notary with data and documents required to consummate the transaction.

12. Plaintiff is informed and believes and on that basis alleges that unbeknownst to the Brays, Kendall had been working in concert with Elias and Pullen to evade paying Mexican capital gains tax on the sale of the Property.

13. Plaintiff is informed and believes and on that basis alleges that, contrary to normal custom and practice of Elias and Pullen, the contract and escrow instruction prepared by said defendants omitted any mention of capital gains and fixed a specific date for closing of the sale without making any provision for extending the time for the closing of the escrow in the event such was necessary.

14. The Brays were unaware of these problems with the contract and escrow instructions and therefore they signed and returned them to Elias and PV on December 17, 2003.

15. On or about December 22, 2003, Elias faxed the escrow instructions to the escrow holder and demanded that the Brays send the 10% deposit and thereafter the Brays wire transferred from California into an escrow at First American Title Insurance Company ("First American") in Sunrise, Florida, a 10% guaranteed deposit of $44,000 and a $500 escrow fee in accordance with the contract.

16. Nothing further was done until on or about February 6,

2004, when Kendall requested an irrevocable "Poder" or power of attorney from Notary #10, German Goldman Sarafin, which apparently rendered Kendall ineligible to do anything further with respect to the Property. Pursuant to the Kendall's Poder, Maria Wong Meza ("Meza") became Kendall's attorney in fact for purposes of the sale of the Property to the Brays.

17. Plaintiff is informed and believes and thereon alleges that Kendall's Poder falsely stated that Kendall was legally in Mexico and inferred that he had an immigration status that would exempt him from capital gains tax in connection with the sale of the Property. In fact, Kendall's Migratory Document, which was presented to the Notary #10, did not confer migratory status that would exempt him from paying Mexican capital gains tax expired and in fact the Migratory Document had expired on November 10, 2000.

18. Plaintiff is informed and believes and on that basis alleges that on or about February 9, 2004, Meza, as Kendall's attorney in fact, contrary to normal custom and practice, did not sign the cesion of rights, which would have terminated Kendall's interest in the Property. Instead, on February 10, 2004, a cession of rights signed by Kendall and delivered to HSBC Bank, the financial institution, which had recently acquired Bital Bank, the trustee, and would be holding the Property in a Bank Trust for the Brays as required by Mexican law.

19. Unbeknownst to the Brays, HSBC Bank had and has not approved the cesion of rights because it has not been signed by Meza as Kendall's attorney in fact. Instead, Elias and Pullen concealed from the Brays that HSBC had not accepted and signed

the cesion of rights and was not preparing the bank trust on the Property in favor of the Brays so that all the Brays funds for the purchase of the Property would be transferred from the Brays' accounts in California to First American in Florida.

20. Plaintiff is informed and believes and on that basis alleges that on or about February 10, 2004, Elias, knowing that HSBC could not issue a letter of acceptance of the cession request that had been sent that day and was not signed by Meza, instructed First American, contrary to the original instructions which provided for disbursement on February 17th, to disburse the escrow funds immediately and the Brays agreed to this changed believing that HSBC Bank had approved the cession letter and Kendall had paid the capital gain tax or met the requirements for an exemption and that all other conditions for the transfer of title to the Brays had been met. The Brays signed all required documents and even though Plaintiff is informed and believes and on that basis allege that although Kendall was in Puerto Vallarta at the time, Meza appeared on Kendall's behalf, unbeknownst to the Brays did not sign the cession of rights.

21. As a result of the foregoing, the Brays signed all of the documents necessary to be signed on their behalf and other unnecessary documents, which defendants requested they sign, which enabled Kendall, Elias, Pullen and PV to get the money from escrow immediately. Prior to February 13, 2004, the Brays' bank in California wire transferred the remaining $400,000 to escrow holder First American in Sunrise Florida and the $440,500 was disbursed before Kendall turned over possession of the Property to the Brays on February 16, 2004. In fact, on February 13, 2004,

Elias and Pullen and/or Kendall had faxed forged documents purportedly signed by the Brays to First American.

22. Due to no fault of the Brays, the Bank Trust was not issued and then Notary #7, Elias Amezcua Gonzlez, who had been responsible for pursuing that matter withdrew the title due to the failure of the HSBC to sign the cesion of rights and the file was placed with a new notary, Notary #5, Carlos Castro Segundo, to consummate the transaction.

23. Plaintiff is informed and believes and on that basis alleges that Kendall at the direction of Elias and Pullen, substituted Meza in place of himself to sign the title was to conceal the fact that he was not legally entitled to exemption from Mexico's capital gain tax and that Elias and Pullen have directed Kendall and Meza not to sign any documents because she fears that her wrongful conduct will be revealed.

24. Up until the middle of December 2007, Defendants, and each of them, through their agents have promised to cooperate with Plaintiff, but now it appears clear that unless Plaintiff agrees to the insertion of a clause in the title that Plaintiff or any subsequent buyers will be responsible for any capital gains tax that Kendall may be found to be liable for in the future, contrary to the Mexican law which requires the capital gains tax to be paid by the seller in the absence of an agreement to the contrary.

25. As a result of the foregoing, Plaintiff is informed and believes that despite having paid over $440,000, defendants remain the beneficial owners of the Property.

**FIRST CAUSE OF ACTION**
(Fraud)

26. Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs above, as though fully set forth herein.

27. Plaintiff is informed and believes and on that basis alleges that defendants knowingly designed the subject transaction in such a manner as to relieve Kendall of the obligation of paying any capital gains taxes either in Mexico or the United States.

28. At the time that the Brays made the offer to the present, defendants, and each of them, provided false information regarding Kendall's immigration status, HSBC's acceptance of the cesion of rights and was preparing the Bank Trust on the Property in favor of the Brays, and that everything had been done or would be done to consummate the sale.

29. At the time defendants, and each of them, made these representations, defendants had no intention of transferring the Property unless the Brays paid Kendall's capital gain tax.

30. The representations were made with the intent to induce the Brays to disburse the purchase price prior to obtaining title to the Property and then force the Brays to pay any capital gains taxes if they wanted to have title transferred.

31. Defendants, and each of them, knew these representations were false at the time they were made or made the false representations in reckless disregard of the truth.

32. Defendants, and each of them, intended that the Brays rely on the misrepresentations.

33. The Brays reasonably relied on defendants' misrepresentations.

34. As a direct and proximate and foreseeable result of defendants' concealment and misrepresentations, Plaintiff has suffered economic damages in an amount to be proven at trial.

34. As a further direct, proximate, and foreseeable result of the conduct of defendants, as set forth above, Plaintiff has suffered and continues to suffer from humiliation, mental anguish, fear, and emotional and physical distress, all to his damage in an amount to be proven at trial.

35. Defendants, and each of them, acted with fraud, malice and in conscious disregard for the rights of Plaintiff thereby entitling Plaintiff to punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
(Concealment)

36. Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs above, as though fully set forth herein.

37. Defendants, and each of them, concealed certain material facts from the Brays regarding the subject transaction including, but not limited to Kendall's immigration status, Kendall's liability for payment of capital gains taxes in connection with the subject transaction and HSBC's actions with respect to the cesion of rights document and the Bank Trust on the Property in favor of the Brays.

38. Defendants, and each of them, were under a duty to disclose the facts to the Brays as they were within defendants'

knowledge and not the knowledge of the Brays.

39. Defendants, and each of them, concealed or suppressed the facts with the intent to defraud.

40. The Brays were unaware of the facts and reasonably relied on defendants' deception in proceeding with the transaction.

41. As a direct and proximate and foreseeable result of defendants' concealment and misrepresentations, Plaintiff has suffered economic damages in an amount to be proven at trial.

42. As a further direct, proximate, and foreseeable result of the conduct of defendants, as set forth above, Plaintiff has suffered and continues to suffer from humiliation, mental anguish, fear, and emotional and physical distress, all to his damage in an amount to be proven at trial.

43. Defendants and each of them acted with fraud, malice and in conscious disregard for the rights of Plaintiff thereby entitling Plaintiff to punitive damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
(Negligent Misrepresentation)

44. Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs above, as though fully set forth herein.

45. Defendants, and each of them, falsely represented to the Brays, among other material facts, that Kendall had an immigration status in Mexico that exempted him from paying Mexican capital gains taxes on this transaction, that the HSBC accepted and signed the cesion of rights and was preparing the

Bank Trust on the Property in favor of the Brays, and that before the Brays wired the remaining funds to Kendall that all things necessary to consummate the transaction had been or would be completed.

46. Defendants, and each of them, had no reasonable basis for believing that the representations were true when the representations were made.

47. Defendants, and each of them, intended that the Brays rely on the misrepresentations.

48. The Brays reasonably relied on the misrepresentations.

49. As a direct and proximate and foreseeable result of defendants' concealment and misrepresentations, Plaintiff has suffered economic damages in an amount to be proven at trial.

50. As a further direct, proximate, and foreseeable result of the conduct of defendants, as set forth above, Plaintiff has suffered and continue to suffer from humiliation, mental anguish, fear, and emotional and physical distress, all to his damage in an amount to be proven at trial.

51. Defendants, and each of them, acted with fraud, malice and in conscious disregard for the rights of Plaintiff thereby entitling Plaintiff to punitive damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
(Breach of Contract)

52. Plaintiff realleges and incorporates the allegations contained in all paragraphs above, as though fully set forth herein

53. On or about December 2, 2003, the Brays entered into a

written agreement with Kendall to purchase the Property.

54. Implied in such agreement is a covenant of good faith and fair dealing, which requires that neither party do anything to deprive the other of the benefits of the contract.

55. If any Mexican capital gains taxes are due, such taxes would be the responsibility of Kendall.

56. Defendants have refused to do the acts necessary to consummate the sale so that title can be transferred to the Brays through a Bank Trust.

57. Defendants have breached the Agreement by refusing to do all things necessary to consummate the transaction.

58. The Brays have performed all conditions, covenants and promises required by them to be performed in accordance with the terms and conditions of the contract.

59. As a result of defendants', and each of their, breach of contract, Plaintiff has been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
(Specific Performance)

60. Plaintiff realleges and incorporates the allegations contained in all paragraphs above, as though fully set forth herein.

61. The consideration paid by the Brays for the Property is the fair and reasonable value of the Property, and said contract is, as to Kendall, just and reasonable.

62. The Brays have performed all conditions, covenants and promises required by them to be performed in accordance with the terms and conditions of the contract.

63. Kendall and his agents have refused and continue to refuse to execute the documents to consummate the transaction so that title can be transferred to Plaintiff.

**SIXTH CAUSE OF ACTION**
(Wire Fraud/RICO)

64. Plaintiff realleges and incorporates the allegations contained in all paragraphs above, as though fully set forth herein.

65. Plaintiff is informed and believes and on that basis alleges that defendants Kendall, Elias and Pullen are persons a defined by 18 U.S.C. §1961.

66. Plaintiff is informed and believes and on that basis alleges that defendants, being employed by and/or associated with an enterprise engaged in the activities of which affected interstate and foregoing commerce, willfully and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962.

67. Plaintiff is informed and believes and on that basis alleges that the enterprise whose affairs were conduced through a pattern of racketeering activity, PV and WCA, are business entities as defined by 18 U.S.C. §1961(4).

68. Plaintiff is informed and believes and on that basis alleges that the pattern of racketeering activity engaged in by the defendants, as defined in 18 U.S.C. §1961, consisted of the following: fraud in the sale of real estate, fraud in the

failure to pay taxes, acts of mail fraud in violation of 18 U.S.C. §1341 and acts of wire fraud in violation of 18 U.S.C. §1343.

69. As a direct and proximate result of the pattern of racketeering activity described herein, Plaintiff has been damaged in an amount to be proven at the time of trial.

70. Pursuant to 18 U.S.C. §1964(c), Plaintiff is entitled to trebled the damages alleged above and proved at the time of trial. Further, Plaintiff is entitled to such injunctive and equitable relief provided for under 18 U.S.C. §1964(a) as the Court may deem just and proper.

71. Pursuant to 18 U.S.C. §1964(c) Plaintiff is entitled to recover the cost of suit and reasonable attorney fees.

**SEVENTH CAUSE OF ACTION**
(Conversion)

72. Plaintiff realleges and incorporates the allegations contained in all paragraphs above, as though fully set forth herein.

73. Defendants, and each of them, have converted the sum of $440,500 that the Brays wire transferred in exchanged for the Property.

74. Plaintiff has and continues to expended time and funds in an amount in to be proven at trail to retrieve the money or obtain their interest in the Property.

75. As a proximate result of the foregoing, Plaintiff has and will continue to sustain damages in an amount to be proven at trial.

76. In doing the acts, alleged above, defendants, and each of them, acted maliciously and oppressively towards Plaintiff, and by reason thereof, Plaintiff is entitled to exemplary or punitive damages in an amount according to proof.

**EIGHTH CAUSE OF ACTION**
(Negligence)

77. Plaintiff realleges and incorporates the allegations contained in all paragraphs above, as though fully set forth herein.

78. As a result of the negligence and carelessness of defendants, and each of them, Plaintiff has been damaged as set forth above.

79. In doing the acts, alleged above, defendants, and each of them, acted maliciously and oppressively towards Plaintiff, and by reason thereof, Plaintiff is entitled to exemplary or punitive damages in an amount according to proof.

**NINTH CAUSE OF ACTION**
(Declaratory Relief)

80. Plaintiff realleges and incorporates the allegations contained in all paragraphs above, as though fully set forth herein.

81. Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, Defendants are required to cooperate to close the transaction whereby the Brays purchased the Property and Defendants, and each of them, refuse to do so unless the Brays assumed responsibility for payment of any Mexican capital gains taxes owed by Kendall.

81. An actual controversy exists.

82. Plaintiff seeks an order declaring that he is entitled to be the beneficiary of the bank trust with respect to the Property with no obligation to pay any Mexican capital gains taxes and that defendants, and each of them, be directed to take all steps to transfer their interest in the Property to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below:

1. For an order declaring the respective rights and obligations of the parties with respect to the Property.

2. For and order compelling Defendants and, their respective agents, representatives, and anyone acting on their behalf or at their direction, directly or indirectly, to do all things necessary to transfer their interest in the Property to Plaintiff;

3. For restitution and equitable relief, including disgorgement of moneys received as allowed under the law;

4. For specific performance of the contract to sell the Property;

5. For an award of special damages in an amount according to proof;

6. For an award of general damages in an amount according to proof;

7. For an award of punitive damages in an amount according to proof;

8. For costs of suit incurred herein, including an award of attorney; and,

9. For such other further relief as the Court deems just and

proper.

Dated: January 22, 2008

LAW OFFICES OF ROBERT F. KANE
Attorneys for Plaintiff
LELAND H. BRAY

By: ____________________
ROBERT F. KANE

**DEMAND FOR JURY TRIAL**

Plaintiff Leland H. Bray demands a trial by jury of the above entitled case.

Dated: January 22, 2008

LAW OFFICES OF ROBERT F. KANE
Attorneys for Plaintiff
LELAND H. BRAY

By ____________________
ROBERT F. KANE