IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LELAND BRAY, | ) Case No. 08-0535 SC |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANT'S |
| | ) <u>MOTION TO DISMISS</u> |
| v. | ) |
| | ) |
| MESSMORE KENDALL, HONEY TAYLOR, MESSMORE KENDALL III, ALEXANDER KENDALL, and DOES 1 through 100, inclusive, | ) ) ) ) |
| | ) |
| Defendants. | ) |

## I. **INTRODUCTION**

Now before the Court is the Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and Improper Venue ("Motion"), and Memorandum of Support ("Kendall Mem.") filed by Defendant Messmore Kendall ("Kendall"), Docket No. 16. Plaintiff Leland Bray ("Bray") filed an Opposition ("Opp'n"). Docket No. 37. In this Court's Order of September 23, 2009, the parties were asked to submit additional briefing regarding the service and venue provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as the jurisdictional consequences thereof. Docket No. 39. In response to that Order, Kendall has submitted a Supplemental Brief and Bray has submitted a Supplemental Opposition. Docket No. 42 ("Kendall Supplemental

Br."), 44 ("Supplemental Opp'n"). Having considered all of the papers submitted by both parties, the Court hereby GRANTS Kendall's Motion, for the reasons stated below.

**II.  BAKCGROUND**

Bray is a citizen of the United States, with his primary residence in the State of California. First Am. Compl. ("FAC"), Docket No. 13, ¶ 1. At the end of 2003, the time that this dispute originated, Bray was residing with his wife in Baja California. Bray Decl.[1] ¶ 7. Kendall resides in Florida. Kendall Decl.[2] ¶ 2. Bray has acknowledged that Kendall and all other Defendants are not residents of California. FAC ¶ 2.

Kendall was the owner of a house in Puerto Vallarta, Mexico. Id. ¶ 7. He owned it pursuant to a bank trust with Bital Bank, which was later purchased by HSBC Bank. Id. Defendants Honey Taylor, Messmore Kendall III, and Alexander Kendall (collectively with Kendall, "Defendants") were subsequent beneficiaries of that trust. Id. Kendall listed the house for sale with PV Real Estate, a company that represents itself as being experienced in transferring property in Mexico to American citizens. Id. ¶¶ 8-9. PV Real Estate operates its business from Puerto Vallarta. See Bray Decl. Ex. A. In December of 2003, after viewing the website of PV Real Estate, Bray and his wife met with its agents and agreed to purchase Kendall's house. FAC ¶¶ 9-10. An escrow was opened at First American Title Company ("First American") in Sunrise,

---

[1] Bray submitted a declaration in support of the Opposition. Docket No. 36.
[2] Kendall submitted a declaration in support of the Motion. Docket No. 18.

2

Florida.[3]  Id. ¶ 11.

Bray claims that the contract and escrow instructions "omitted any mention of capital gains and fixed a specific date for closing of the sale without making any provision for extending the time for closing of the escrow in the event such was necessary."  Id. ¶ 12. Bray claims that he was unaware of this problem, and after signing the documents, he wired $44,000 as a 10% guaranteed deposit, and a $500 escrow fee, from his bank in California to First American. Id. ¶¶ 13,14.

Bray claims that although Kendall signed a cesion of rights with respect to the property and delivered it to HSBC, the bank refused to accept the cesion of rights because it should have been signed by Kendall's attorney in fact, rather than by Kendall himself.  Id. ¶¶ 16-17.  Bray contends that PV Real Estate concealed this fact from him.  Id. ¶ 17.  Because Bray believed the transfer was underway, he authorized Kendall and PV Real Estate to immediately receive any money sent to the escrow account.  Id. ¶ 18-19.  Bray claims that sometime before February 13, 2004, his bank in California transferred the remaining $400,000 in purchase money to First American, and this money was distributed before Kendall turned over the property to Bray.  Id. ¶ 19.  Bray also suggests that someone at PV Real Estate and/or Kendall "faxed forged documents purportedly signed by the Brays to First American."  Id.

Although Bray and his wife eventually moved into the house, Bray never received legal title.  Bray Decl. ¶¶ 16-18.  The parties

---

[3] Bray also refers to this as First American Title Insurance Company.  FAC ¶ 14.

attempted to resolve the dispute over the title for many years, however they have apparently been unable to resolve the question of who should be responsible for the capital gains tax. Id. ¶ 21. In January of 2008, Bray filed suit against Defendants in the Northern District of California. Bray asserts a total of ten causes of action, ranging from fraud and negligent misrepresentation to violation of RICO.

**III. LEGAL STANDARDS**

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a court to dismiss a suit for lack of personal jurisdiction over a defendant. "The burden of proof is on the plaintiff to show that jurisdiction is appropriate, but in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). The "court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

Generally, jurisdiction must comport with both the long-arm statute of the state in which the district court sits, as well as the constitutional requirements of due process. Mattel, Inc., v. Greiner & Hausser GmbH, 354 F.3d 857, 863 (9th Cir. 2003). The Ninth Circuit has recognized that the California long-arm statute, Cal. Code Civ. Proc. § 410.10, allows Courts to exercise jurisdiction consistent with the limits of the Due Process Clause of the Constitution, "so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due

4

process." Boschetto v. Hansing, 539 F.3d 1011, 1015-16 (9th Cir. 2009).

**IV. DISCUSSION**

A defendant may be subject to personal jurisdiction within a particular judicial district pursuant to theories of either general or specific jurisdiction. See Boschetto, 539 F.3d at 1015-16. In either case, the "defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Schwarzenegger, 374 F.3d at 801). General jurisdiction "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," and requires that the defendant be engaged in "continuous and systematic general business contacts" that "approximate physical presence" in the forum. See Schwarzenegger, 374 F.3d at 801 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)).

Alternatively, "a court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court." Unocal Corp., 248 F.3d at 923. The Ninth Circuit has developed a three-pronged test to determine whether specific jurisdiction over a non-resident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting

activities in the forum, thereby invoking the
                    benefits and protections of its laws;
                    (2) the claim must be one which arises out of or
                    relates to the defendant's forum-related
                    activities; and
                    (3) the exercise of jurisdiction must comport
                    with fair play and substantial justice, i.e. it
                    must be reasonable.

Boschetto, 539 F.3d at 1016 (quoting Schwarzenegger, 374 F.3d at 801).

### A. Whether Bray's RICO Claim Permits Personal Jurisdiction Before This Court Based on "National" Contacts

The Court must first determine which forum is relevant for measuring minimum contacts and determining personal jurisdiction: California, or the United States. District courts generally derive their jurisdiction over defendants from the proper service of process as to those defendants, and their jurisdiction is therefore bounded by the statutes that authorize service. See Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1177 (9th Cir. 2004). Bray argues that under certain federal statutes that authorize nationwide service of process, any federal district court has jurisdiction over a properly served defendant that has minimum contacts with the United States. Opp'n at 8. Bray is correct in this regard -- where Congress establishes nationwide service of process, such service may establish personal jurisdiction over a defendant. In Action Embroidery, the Ninth Circuit recounted that "the relevant forum with which a defendant must have 'minimum contacts' in a suit brought under Section 12 of the Clayton Act is the United States," rather than the particular state in which the district court sits. 368 F.3d at 1180. Bray argues that RICO similarly authorizes nationwide service of process. Opp'n at 8.

Under this reasoning, Kendall's contacts with California are irrelevant to personal jurisdiction, so long as he has minimum contacts with the United States. However, Action Embroidery, addressed the service provisions of the Clayton Act, and did not hold that RICO includes a national service provision. The question before this Court is therefore whether RICO in fact authorizes national service of process under Ninth Circuit law.

Bray does not identify which RICO provision he is relying on to authorize national service of process. RICO has two provisions that circuit courts have identified as relevant to service of process: Sections 1965(b) and 1965(d) of title 18 of the United States Code. Section 1965(b) states:

> [A]ny district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b). Subsection (d) states that "[a]ll other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." Id. § 1965(d).

A circuit split has developed regarding how these provisions should be read. The Ninth Circuit was the first to address this issue. It relied exclusively on subsection (b) to conclude that:

> the right to nationwide service in RICO suits is not unlimited. For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict

7

> conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.

Butcher's Union Local No. 498 v. SDC Invest., Inc., 788 F.2d 535, 538 (9th Cir. 1986) (citations omitted). In other words, the Ninth Circuit has held that a plaintiff may utilize subsection (b) to establish personal jurisdiction over codefendants only if there is personal jurisdiction -- using traditional state-based minimum contact analysis -- over at least one defendant. This would require Bray to establish minimum contacts between at least one Defendant and California. However, Butcher's Union did not address the significance of subsection (d).

Bray cites two decisions issued by the Fourth and Eleventh Circuits, both of which were authored roughly eleven years after Butcher's Union, and both of which rely on subsection (d) to conclude that RICO generally does authorize nationwide service of process. Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997). In both of these cases, the circuit courts found that RICO authorizes nationwide service of process, and that district courts may therefore establish personal jurisdiction based upon a defendant's minimum contacts with the United States where the plaintiff brings a RICO claim. Because Bray cites Panama and ESAB Group to support his arguments, this Court assumes that Bray is not basing his assertion of nationwide service of process on this subsection.

Kendall argues that this Court should not adopt the reading of subsection (d) that is found in Panama and ESAB Group. Although

the Ninth Circuit has not revisited the question of nationwide service under RICO since Butcher's Union, Kendall argues that the position of the Fourth and Eleventh Circuits has not spread to other circuits, and is effectively precluded by Butcher's Union. Kendall Supplemental Br. at 3-4. This Court agrees. The Tenth Circuit thoroughly addressed the progression of case law surrounding RICO's service provisions in Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1229-33 (10th Cir. 2006). It first observed that the Seventh and Second Circuits had already taken positions similar to that taken by the Ninth Circuit in Butcher's Union, by looking exclusively to subsection (b) to permit conditional nationwide service. Id. at 1230 (citing PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65 (2nd Cir. 1998); Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671 (7th Cir. 1987)). It noted that the Second Circuit had analyzed the entirety of 18 U.S.C. § 1695 to conclude that jurisdiction must rest on § 1965(b) alone, and explicitly rejected using subsection (d) to authorize nationwide service of summons, finding that its reference to "other process" referred only to process other than summons or government subpoenas. Id. (citing PT United, 138 F.3d at 72). The Tenth Circuit adopted this position as well, id. at 1231, as did the D.C. Circuit two years later, FC Inv. Group LC v. IFX Mkts., Ltd, 529 F.3d 1087, 1099 (D.C. Cir. 2008).

Although this Court requested additional briefing on the issue of nationwide service of process after Bray raised the argument in his Opposition, Bray did not address this issue in his Supplemental Opposition, and has not suggested that the Ninth Circuit's position has shifted since Butcher's Union. Given the Ninth Circuit's

9

decision with respect to subsection (b), its silence with respect to subsection (d), and other circuit courts' rejection of nationwide service under subsection (d), this Court will not allow Plaintiff to rely on subsection (d) alone to establish jurisdiction. "When a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice." Cory, 468 F.3d at 1131. Consequently, Bray needs to establish that this Court has personal jurisdiction over at least one defendant, based on minimum contacts with California, before he may rely on RICO's nationwide service of process provision to establish jurisdiction over the codefendants. Butcher's Union, 788 F.2d at 538.

### B.   Minimum Contacts with California

Bray has not suggested that Defendants are subject to general jurisdiction in California. Rather, Bray asserts that "Kendall purposefully entered into the transaction to sell the Property to Bray knowing that Bray was an American citizen and that the money for the purchase price was coming from California." Opp'n at 6.

Although Bray apparently held a California residence at the time that he dealt with PV Real Estate, he claims to have been residing outside of the United States at the time, within Baja California. Bray Decl. ¶ 7. Bray met with PV Real Estate in their office. FAC. ¶ 9. Bray has failed to explain how any act performed by Defendants or their agents was ever "directed" at California. Nor has Bray identified a single communication that was directed to California. This Court is not persuaded that negotiating with a California resident can suffice to establish

personal jurisdiction, where there is no basis to conclude that any of the negotiations took place in California.

Bray informed PV Real Estate that he would be paying for the property with funds that were located in California, and that Defendants "caused" him to wire these funds from California into the escrow account in Florida. Bray Decl. ¶¶ 8, 11. However, drawing funds from a California bank account is not sufficient to establish jurisdiction in California. "[T]he bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." Helicopteros, 466 U.S. at 416-17; see also Synergy, Inc. v. Manama Textile Mills, W.L.L., No. 06-4129, 2008 U.S. Dist. LEXIS 12791, *26 (Feb. 20, 2008 D.N.J.) ("[I]t is improper to sustain specific jurisdiction on the basis of the location of a resident party's bank."); Int'l Beauty Prods., LLC v. Beveridge, 402 F. Supp. 2d 1261, 1275 (D. Col. 2005) ("[T]he fact that checks are drawn on a Colorado bank account is not sufficient to show harm in Colorado when, as here, the checks are cashed in another state.").

Bray offers a number of other sundry connections between the Defendants and California, but none of these are sufficient to establish minimum contacts. Although Kendall admits to having been to California, he has not come since 1981. Kendall Decl. ¶ 3. The fact that Kendall's "friend and agent" at PV Real Estate frequently comes to California or advertises in California is insufficient.

See Bray Decl. ¶ 27.  This connection is far too tenuous to support asserting personal jurisdiction over Kendall or the other Defendants.  The Court concludes that Bray has not made a prima facie showing of minimum contacts between Kendall, or any other Defendant, and the State of California.[4]

### C. Transfer

Bray has requested that this suit be transferred to Florida in the event that personal jurisdiction is found lacking.  Opp'n at 8.  28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district in or division in which it could have been brought."  28 U.S.C. § 1406(a).  The question is therefore whether justice requires transfer of this suit to Florida, rather than dismissal.

The only affirmative reason that Bray provides for transfer is that "Kendall admits he resides in Florida."  Id. at 9.  Bray never explains why the interests of justice require transfer.  He does not explain why he would be prejudiced by a failure to transfer.  He does not suggest that a statute of limitations has run that would prevent him from refiling in a more proper forum.  The Court may decline to transfer based solely upon this failure.

What Bray does provide is several pages of briefing to explain why the forum-selection provision of the offer document that he signed is inoperative (in fact, this is the only topic that is substantially addressed by Bray's supplemental brief).  Opp'n at

---

[4] Because of the Court's finding with respect to personal jurisdiction, it need not reach Kendall's claim that venue is improper.

12

9-11; Supplemental Opp'n at 1-4. The Court is unpersuaded. Bray has not met his burden of establishing that the forum-selection provision is unenforceable, and this provision weighs against transferring this case to Florida in the interest of justice. Although this suit does involve two United States citizens, it is not a local dispute, and the parties have unambiguously selected a Mexican forum to resolve it. The contract stated that the parties would submit to the jurisdiction of the Court and Tribunals of the City of Puerto Vallarta for "interpretation and execution of the present Offer . . . waiving to those [jurisdictions] that may correspond them by virtue of their present and future domiciles." Bray Decl. Ex. B ("Bray Offer") at 5. This language does more than designate a Mexican forum as a possible forum -- it unambiguously waives access to the jurisdictions of the parties' home fora. Bray has not stated any compelling reason why the chosen forum is inadequate, or even inconvenient, except by stating in a conclusory manner that a Mexican forum will not be "expeditious and fair" and will be "unpredictable and corrupt." Opp'n at 11. Bray has not presented any compelling reason why transfer to Florida is in the interest of justice.

## V. CONCLUSION

The First Amended Complaint is hereby DISMISSED for lack of personal jurisdiction over Defendants.

IT IS SO ORDERED.

Dated: January 5, 2010

UNITED STATES DISTRICT JUDGE

13